ILLINOIS CENTRAL RAILROAD COMPANY *v.* P. C. PERSON.

1. RAILROAD COMPANY. *Action for killing mule. Case in judgment.*

   A mule 30 or 40 feet from a railroad crossing and moving towards it was observed by the engineer in charge of an approaching train. The railroad was fenced on both sides, but there was an opening in the fences at the crossing. The engineer did not attempt to stop his train, sound the cattle alarm or to do anything else to avert a collision. The mule rushed ahead, collided with the engine and was killed. The owner brought an action against the railroad company for damages for such killing. *Held,* that the company is liable.

2. SAME. *Action of tort. Evidence of breach of contract. Case in judgment.*

   On the trial of the cause of action above stated, evidence was admitted for the plaintiff which tended to show that the railroad company and plaintiff had agreed that the latter should furnish posts and the former would

construct a fence, and leave an opening at the crossing in question at which it would erect bars; that plaintiff furnished posts, and the company built the fence, leaving an opening as agreed, but failed to erect bars. The defendant company objected to the admission of this evidence. *Held*, that such evidence was admissible in so far as it tended to show the condition of the fences and opening at the crossing in question; but so much thereof as related to the agreement in reference to the construction of such fences was inadmissible.

APPEAL from the Circuit Court of Yalobusha County.

HON. W. S. FEATHERSON, Judge.

This is an action brought by P. C. Person against the Illinois Central Railroad Company to recover damages for the killing of a mule of the former by a train of the latter.

It appears that defendants' train, it being a pay train, consisting of engine, tender and two light cars, was running at about twenty-five miles per hour, and when it was approaching a " country neighborhood " railroad crossing the engineer first saw the mule in question running toward the crossing, and some thirty or forty feet therefrom. He made no effort to stop his train, nor sounded any alarm, nor made any attempt to frighten the mule or avert the collision. The mule rushed ahead, there was a collision, and the mule was so injured therefrom that it afterwards died.

On the trial the plaintiff testified as follows : " Witness and F. C. Cornelius, supervisor of defendants' road, agreed that witness should furnish posts and Cornelius would furnish wire, and put up a wire fence along either side of the railroad track, leaving an opening in the fence on either side where a neighborhood road running east and west crosses the railroad track. And Cornelius agreed that he would put up and keep up gates or good bars at the opening on either side of the railroad track ; and the witness furnished the posts and the fence was built, but no gates or bars were furnished. All that was done at the opening was to drive large railroad nails in the posts at the opening in the fence, the nails being on the outside from the railroad track, and on these as many as three or four poles were laid. These poles had settled and broken down, and for some

two years before the mule was killed the openings were exposed so that stock could pass through on to the railroad track."

The defendant objected to the introduction of the above testimony, but the objection was overruled.

There was judgment for the plaintiff, and the defendant appealed.

*W. P. & J. B. Harris,* for the appellant.

1. It is perfectly obvious, from what the witnesses said, that the company was not liable on account of any negligence in moving or running the train, or in having proper appliances of all sorts. For once at least the sudden running upon the track at the approach of a train at full speed is conceded.

2. The defendant, on the trial, objected to the evidence touching the contract of servitude by the supervisor for the time as to the gate at the crossing, because the suit was not for a breach or neglect of. duty under a contract as to fence and gate.

It will at once occur to the court that a liability for a breach of contract by which it is claimed that the railroad company is bound to pay for all stock killed which enter by the opening,. without regard to the question of the management of the train and the circumstances attending the killing, is a very different thing from the ordinary liability for killing animals at large and coming upon the track; and that while, as to the one case (the last mentioned), the statutory presumption arises and must be repelled, no such presumption arises as to the negligence or willful breach of contract or duty as to keeping a gate.

The court will at once perceive that the evidence tending to show the incredible fact of a perpetual servitude as to the gate was inadmissible unless the suit was brought on that contract.

There was not only no evidence of fault, laying the contract. aside, but the presumption of law as to the killing, overthrown by evidence unusually trustworthy and satisfactory, and corroborated by the circumstances brought to light. .

We cite certain of our cases, where the ground of action grows out of contract relations. The provision of the Code, § 1059, has no application: *Railroad Co.* v. *Trotter,* 60 Miss., 442.— Fences and gaps: *Ill. Cent. Railroad Co.* v. *Walker,* 63 Miss., 13;

obligations of railway company's voluntary promise, etc., *Rwy. Co.* v. *Dixon,* 61 Miss., 119; *Railroad Co.* v. *Packwood,* 59 Miss., 280, as to rebuttal of presumption of negligence.

See as to injuries attributable to other causes than negligence in running trains, *Ill. Cent. R. R. Co.* v. *Weathersby,* 63 Miss., 581.

Nothing can be clearer than that the plaintiff put his case on the imputed neglect as to the gate, it being clear that no fault could be rightfully imputed as to the management of the train.

*S. M. Ross,* for the appellee.

This is *not* a suit for breach of contract, and the evidence concerning the arrangement between appellant and appellee was introduced to show that the railway company had fenced their track, leaving at this crossing an opening by which cattle and stock could go upon their road; thus making this crossing a place of unusual danger, and consequently requiring more than usual care on part of appellant in running its trains. It is true that, by promising to put up and keep up gates or bars at this crossing, the railway company induced the appellee to furnish them the posts which they used in constructing their fence; and had this promise been complied with, the crossing would not not have been so dangerous.

The evidence was clearly admissible to show that the railway company had by its own act created a place of peculiar and unusual danger to the stock and cattle of that community, and it should have exercised a corresponding amount of care in running its trains at this point.

The testimony of the appellant's own witnesses shows that not even ordinary care and diligence were used; for they say they saw the mule approaching the track—the engineer says within thirty or forty feet of it—and no alarm was sounded; the bell was not rung or the whistle blown.

*S. M. Ross* also made an oral argument.

CAMPBELL, J., delivered the opinion of the Court.

So much of the evidence as related to the agreement, by virtue of which the fence was erected, was incompetent, and, if the objection to evidence had been thus limited, it should have

been sustained.   It was admissible to show the existence of the fence and opening, in order that the conditions under which the killing of the mule occurred might be known, so as to determine the existence or non-existence of negligence.   The evidence of the engineer in charge of the locomotive is that he saw the mule thirty or forty feet from the railroad crossing running to the crossing, and it is not pretended that the cattle alarm was given, or anything done or attempted to frighten the mule or avert the collision.   Under these circumstances a verdict for the plaintiff was demanded, and any other would have been properly set aside, if rendered.   The jury was properly instructed, and, although evidence was introduced which should not have been, the verdict being a correct one on the competent evidence, should not be disturbed.

*Affirmed.*